1

2 **UNITED STATES DISTRICT COURT**

3 **DISTRICT OF NEVADA**

4 wedi Corp.,                                              Case No. 2:23-cv-01969-CDS-BNW

5                           Plaintiff              **Order Addressing Plaintiff's Motion for**
                                                   **Partial Summary Judgment (ECF No. 134)**
6 v.

7 Hydroblok Grand International Ltd., et al.,

8                           Defendants

9

10        This is a case between plaintiff/counterdefendant wedi corporation and

11 defendants/counterclaimants Hydroblok Grand International Ltd. d/b/a Hydroblok Grand

12 Canada, Hydroblok Grand International Inc. d/b/a Hydroblok Grand Nevada, and Hydro-Blok

13 USA LLC (collectively "defendants") in which wedi seeks to recover from defendants for (1)

14 alleged violations of the Lanham Act (15 U.S.C. § 1125) and (2) violations of NRS 41.600, which

15 addresses consumer fraud. Compl., ECF No. 1 at 11–12. In their amended counterclaim,

16 defendants allege a breach of contract relating to a settlement agreement signed between wedi

17 and several defendants—including Hydro-Blok USA—in a prior lawsuit. Am. answer &

18 countercl., ECF No. 125 at 58–60.[1]

19        Before the court is wedi's motion for partial summary judgment on defendants'

20 affirmative defenses to wedi's complaint. ECF No. 134. This motion has been fully briefed.[2]

21 Following the court's order for supplemental briefing, defendants also request the court use its

22 "inherent power to grant summary judgment to dismiss the present action in its entirety." ECF

23 No. 141 at 3.

24

25

26

---

[1] I disposed of defendants' counterclaim for abuse of process in a prior order. *See* ECF No. 138 at 4–7.
[2] Resp. to mot. for partial sum. j., ECF No. 135; Reply re: mot. for partial sum. j., ECF No. 136.

I find that, even when read in the light most favorable to it, wedi knew, or should have known, that it could bring a claim against Hydroblok for falsely advertising that its products were "ICC-ES certified" at the time wedi entered into a settlement agreement with the defendants in a prior iteration of this case. However, because two of the current defendants were not signatories to the settlement agreement, I order the parties to provide supplemental briefing on the issue of whether the non-signatory defendants in this case can enforce the agreement's terms.

I.    **Background**

This motion continues nearly ten years of litigation between these and related parties.[3] In April 2015, Hydro-Blok USA sought declaratory judgment against wedi over patent infringement in the Western District of Washington. *Hydro-Blok USA LLC v wedi GmbH, et al.*, Case No. 2:15-cv-00615 (W.D. Wash. April 17, 2015) ("the '615 action"). wedi filed its own suit in the Western District of Washington against Brian Wright, owner of Hydro-Blok USA LLC; Sound Product Sales L.L.C. (another company owned by Wright); and Hydro-Blok USA LLC.[4] Case No. 2:15-cv-00671, ECF No. 1 (W.D. Wash.) ("the '671 action"). The actions were consolidated into the '671 case. *See* ECF No. 64 in '671 action at 1. Hydro-Blok USA ultimately voluntarily dismissed the '615 action. *See* Am. answer & counterclaim, ECF No. 125 at 47.

Included in wedi's claims in the '671 litigation were claims for false advertising under the Lanham Act and Washington's Consumer Protection Act (RCW 19.86.20) based on the advertising statement that "All Hydro-Blok products are IAPMO tested and certified[.]" '671 action am. compl., ECF No. 134-1 at 71–72; '671 action first am. counterclaims, ECF No. 134-1 at 94. The International Association for Plumbing and Mechanical Officials ("IAPMO") certifies

---

[3] wedi requests that I take judicial notice of the publicly recorded documents relevant to this case, including the docket and documents filed in Case No. 2:15-cv-00671, ECF No. 1 (W.D. Wash.) ("the '671 action"). ECF No. 134 at 3. A court may take judicial notice "'of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). Therefore, I take judicial notice of the docket and filings in the '671 action.

[4] Over time, Hydroblok International Ltd. also became involved in the litigation.

certain products that meet applicable performance standards. '671 action first am.
counterclaims, ECF No. 134-1 at 94. wedi notably argued in its November 5, 2018 opposition to
the '671 defendants' motion for summary judgment regarding the falsity of the IAPMO statement
that: (1) IAPMO never tested any Hydro-Blok products (i.e., IAPMO certification was based on
the testing of someone else's product), and (2) even if the samples tested were Hydro-Blok
products, "substantial changes" were made to the products in their materials or manufacturing
process without the knowledge or consent of IAPMO, which would have required their
delisting under IAPMO's policies and certification agreement. Opp. to mot. for summ. j.
(redacted), ECF No. 187 in '671 action at 6–8. wedi took the depositions of Brian Wright and
Kenny Koch (Hydroblok International's president) in February 2019, and subsequently filed a
supplemental summary judgment brief explaining that wedi learned during the February 2019
depositions of Wright and Koch that the '671 defendants had recently changed their advertising
claim from "All HYDRO-BLOK products are IAPMO tested and certified" to "HYDRO-BLOK
products are ICC-ES tested and certified." wedi's suppl. brief in opp. to mot. for summ. j.
(redacted), ECF No. 255 in '671 action at 8–9. In the same supplemental brief, wedi stated that it
learned during Koch's February 5 and 6, 2019 deposition that the Hydro-Blok products were
"ICC-ES tested," but the ICC-ES certified the Hydro-Blok products in 2018 based entirely on
earlier testing done by IAPMO when IAPMO certified the products in 2015; essentially claiming
that the ICC-ES itself never tested any Hydro-Blok products. *Id.* In light of this information,
wedi asserted that the "HYDRO-BLOK products are ICC-ES tested and certified" claim was
"literally false for the simple fact that, as Koch has admitted, the ICC-ES never actually tested
any of Hydroblok's products . . . ." *Id.* On June 18, 2019, the '671 court granted the '671 defendants'
motion for summary judgment as to wedi's false advertising claim regarding IAPMO, and

separately granted summary judgment to the '671 defendants on Hydroblok's ICC-ES statement as well, stating:

> wedi, however, raises the same complaint about ICC certification that it made about IAPMO certification, arguing that, because ICC Evaluation Service did not independently test the HYDRO-BLOK products, but instead relied on IAPMO R&T's reports, *see* Koch Dep. . . . , the certification does not relate to products currently on the market, and any statements about ICC certification are literally false. For the reasons outlined earlier, wedi's allegation of literal falsity lacks merit, as does any suggestion that a representation about a certification actually issued is somehow misleading. wedi's dissatisfaction with the process for certifying HYDRO-BLOK products is more appropriately raised with ICC Evaluation Service or the ICC.

ECF No. 260 in '671 action at 19–20. wedi filed its Notice of Appeal and Amended Notice of Appeal on March 13, 2019, and May 5, 2019, respectively, seeking review of the district court's summary judgment decision on the IAPMO and ICC-ES false advertising claims. ECF Nos. 322 and 329 in '671 action. The Ninth Circuit affirmed the grant of summary judgment on the IAPMO advertisement claim but reversed as to the ICC-ES advertisement claim, holding:

> [T]he district court erred when granting summary judgment in favor of HydroBlok with respect to the ICC-ES Statement. A material question of fact exists as to whether Hydro-Blok's products were tested by ICC-ES because Plaintiff presented evidence that ICC-ES did not request product samples from Hydro-Blok to test, but rather relied upon IAPMO's tests. A legitimate claim could be made that no testing of Hydro-Blok products was conducted by ICC-ES. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (explaining that an "actionable statement is a specific and measurable claim, capable of being proved false") (internal quotation marks omitted). Therefore, we reverse the district court's entry of summary judgment in favor of Hydro-Blok with respect to this claim.

ECF No. 335 at 4–5 in '671 action. On May 18, 2021, the Washington district court, on remand, set trial on the ICC-ES false advertising claims for September 27, 2021. ECF No. 340 in '671 action. In June 2021, wedi sought additional time to reopen discovery to explore the ICC-ES statement further. ECF No. 341 in '671 action. In the motion, wedi, for the first time, raised the argument that "Defendants' claim that 'Hydro-Blok products are tested and certified' is literally false because . . . Defendants falsely obtained certification by failing to disclose to ICC-ES that the products IAPMO tested in 2014 were just prototypes and not finished production samples,"

explaining that it did not learn "that ICC-ES requires product certification to be based on final production samples, not prototypes" until after the Ninth Circuit made its order reversing summary judgment. *Id.* at 11. The court, denying the motion, stated that "wedi fails to demonstrate that further discovery from defendants would tend to prove one way or the other whether ICC-ES tested the Hydro-Blok Products." ECF No. 345 in '671 action at 2. In August 2021, wedi filed its Rule 41(a)(2) motion for voluntary dismissal of its remaining claims and in September 2021, the motion was granted. ECF Nos. 360 and 369 in '671 action.

wedi filed the present lawsuit in March 2022. Compl., ECF No. 1. It asserts two causes of action: false advertising and deceptive trade practices under federal and state law concerning the offer and sale by defendants Hydroblok Grand International Ltd., Hydroblok International Inc., and Hydro-Blok USA LLC of waterproof shower system products under section 43(a) of the Lanham Act (15 U.S.C. §1125) and under Nevada's consumer fraud law (Nev. Rev. Stat. § 41.600). *Id.* This case was transferred to the Western District of Washington considering the extensive litigation between wedi and those involved in Hydroblok that occurred there. ECF No. 44. Following the transfer, defendants filed their answer and a counterclaim. ECF No. 56. The district court in Washington ultimately renoted this case and it was returned to me on May 19, 2023. Order, ECF No. 68.

In their amended answer and counterclaim, defendants raise four affirmative defenses to wedi's claims: claim preclusion, issue preclusion, judicial estoppel, and equitable estoppel. *Id.* at 43–44. Their counterclaim raises an abuse of process claim and a breach of contract claim regarding a settlement agreement signed during the '671 Action between wedi and the defendants in that case. ECF No. 125 at 55–60. Recognizing that the defendants in the '671 action (and thus the signatories of the settlement agreement) are not identical to the defendants in this action, defendants state: "[b]y virtue of its status as successor in interest to Hydroblok International Ltd., Defendant/Counterclaimant Hydroblok Grand International Ltd. has inured the benefits and detriments of the Settlement Agreement as though it was an original party to

the Settlement Agreement." ECF No. 125 at 59. In its answer to the counterclaim, wedi denies this. ECF No. 140 at 15. There has been no further briefing on the matter.

### A. The Court's order to show cause (ECF No. 138)

wedi filed a motion to dismiss the counterclaim (ECF No. 127 and ECF No. 128) and a motion for partial summary judgment on the defendants' affirmative defenses related to wedi's claims (ECF No. 134). I resolved the motion to dismiss, finding that defendants had sufficiently pled their breach of contract counterclaim but dismissing the abuse of process claim for failing to allege that wedi committed a willful and improper act during the conduct of this proceeding. Order, ECF No. 138 at 6–9. In that order, I also deferred ruling on the present motion. *Id.* at 9–10. The reason I chose to defer my ruling arose in the portion of the briefings related to the contract claim, in which defendants acknowledged a settlement agreement from the '671 action that wedi, Hydro-Blok USA LLC, and Hydroblok International Ltd. signed on December 5, 2019, in which the parties agreed:

> Except as expressly reserved below in paragraph D, each individual party bestows to all other parties a covenant not to sue/arbitrate (or otherwise litigate or pursue) any claim/causes of action/appeals/possible appeals, that are known or should have been known, as of today's date, December 5th, 2019.

*Id.* at 7–8 (quoting ECF No. 124-1 (sealed), Dec. 5, 2019 Hr'g tr. at 7–8).[5] In paragraph D of the settlement agreement, wedi preserved "its right to appeal the District Court's summary judgment rulings with respect to its claims under the Washington Consumer Protection Act and the Lanham Act pertaining to false advertising, and to pursue any subsequent litigation that may be permitted as a result of that appeal[.]" ECF No. 124-1 (sealed), Dec. 5, 2019 Hr'g tr. at 9. In the counterclaim, defendants state that "wedi's operative complaint in this Action is explicitly predicated on [defendants'] 'ICC-ES certified' claims that are alleged to constitute

---

[5] As I noted in the previous order, the breach of contract counterclaim is premised on information redacted in the parties' unsealed filings. I provided the parties with an opportunity to file motions to seal the previous order and redact the information related to the settlement agreement, but no such motions were filed. Therefore, although this involved quotation of information redacted in the parties' unsealed filings, I do not file this order in a redacted format.

'false advertising statements [that] have been made continually since at least 2018 through today'" and "wedi knew of these statements prior to December 5, 2019." ECF No. 124 (sealed) at 59. Specifically, in the counterclaim, defendants pointed to a filing in the '671 action in which wedi alleged that "Wright et al.'s current 'HYDRO-BLOK products are ICC-ES tested and certified' claim is also literally false . . . ." ECF No. 124 at 47 (quoting '671 action, wedi suppl. brief in opp'n to mot. for summ. j., ECF No. 255 at 5–6 (emphasis in original)).

I resolved to wait before ruling on the summary judgment motion, stating:

Defendants raise several affirmative defenses that wedi seeks to have resolved with a motion for summary judgment. ECF No. 134. In reviewing the parties' arguments, I am unable to make conclusive determinations until a threshold question is answered: why did wedi not pursue the "ICC-ES certified" question in the prior litigation when it was seeking resolution on the "ICC-ES tested" question before the issue was ultimately dismissed with prejudice? It was wedi that sought dismissal—with prejudice—of its own prior action. '671 action, ECF No. 360; '671 action, ECF No. 369.

When I transferred the present dispute, I stated:

To the extent that wedi failed to assert certain claims in the prior action and now attempts to assert them, I find that wedi should have brought those claims earlier. "A plaintiff is required to bring at one time all of the claims against a party or privies relating to the same transaction or event." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 692 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). ECF No. 43 at 5. wedi has yet to demonstrate why it failed to assert these claims in the prior action.

ECF No. 138 at 9–10. I then noted that, under Rule 56, the court is empowered to "consider summary judgment on its own after identifying for the parties material facts that may not genuinely be in dispute." Fed. R. Civ. P. 56(f)(3); *see Hybrid Int'l, LLC v. Scotia Int'l of Nev., Inc.*, 2022 U.S. Dist. LEXIS 210406, at *5–6 (D. Nev. Nov. 21, 2022). This, I explained, could be in order "[i]f wedi is unable to adequately explain why it did not address the 'ICC-ES certified' question in the Washington case[.]" ECF No. 138 at 10. I then ordered wedi to show cause to that effect and presented defendants the opportunity to respond. *Id.*

### B.  wedi's supplement in response to the order to show cause (ECF No. 139)

wedi complied with the court's order by filing a supplement to its motion for partial summary judgment. ECF No. 139. In the supplement, wedi asserts that it was only aware that "HYDRO-BLOK products are ICC-ES tested" was allegedly false and was specifically *not* aware that "HYDRO-BLOK products are ICC-ES certified" was false at the time of the '671 action. *Id.* at 2–3. According to wedi, it "learned through the Washington [case] Defendants' Answering Brief filed October 19, 2020, that the Hydro-Blok products tested on which the ICC-ES certification was issued in 2018 were only prototypes." *Id.* At the time, the litigation in the Washington case was on appeal in the Ninth Circuit, which, among other things, reversed and remanded the "ICC-ES tested" false advertising claim to the Western District of Washington for further proceedings. Mar. 3, 2021 Ninth Cir. mem. on '671 case, ECF No. 134-1 at 176–77. wedi alleges that it only "learned that the ICC-ES's practices and standards do not allow it to certify products based on the testing of prototypes; certification can only be based on final production samples" on April 13, 2021, well after it would have had the opportunity to add the claim of false advertising the "ICC-ES certified" statement to the lawsuit. ECF No. 139 at 3–4. wedi sought to reopen discovery in the Washington action on the issue (ECF No. 134-1 at 181–98), but the court denied its motion explaining that the Ninth Circuit's remand was the "ICC-ES tested" claim and the only relevant issue was "whether the ICC-ES tested the Hydro-Blok Products" (ECF No. 134-1 at 199–201). wedi states that because it could not pursue the "ICC-ES certified" issue in the Washington court, it voluntarily dismissed that lawsuit and filed this one. ECF No. 139 at 4. wedi's supplement asserts that, in response to the court's question, it did attempt to litigate the question of the falsity of Hydroblok's "ICC-ES certified" representation but was ultimately rebuffed by the Washington court. *Id.* at 5.

### C.  Defendants' response to wedi's supplement (ECF No. 141)

Defendants responded to wedi's supplement. ECF No. 141. In defendants' response to the supplement, they include documentary evidence suggesting wedi was aware that Hydroblok

used prototypes for its IAPMO certification earlier than wedi represented in its supplement, *Id.* at 4. Specifically, it points to a February 8, 2017 email sent by the Director/VP Marketing & Technical Services at wedi, Bastian Lohmann, to the Director of Standards at ICC-ES, Maribel Campos,[6] in which Lohmann stated, in part:

> Now we have obtained a copy of the full IAPMO report made for this Chinse [sic] product and if I read this report correctly, it seems to me that, when they tested in their Chinese lab, they indeed made use of this loophole in PS106 and did some of the tests by only testing the coating or tile foam, as if both items would be sold separately and applied on the jobsite (possibly under PS106 but not realistic, nor applicable here)
>
> . . .
>
> [P]lease rest assured I won't get you involved in this litigation here, I just value your input because something about this companies' IAPMO/ UPC approval is not right. And we already know [Hydroblok] hand-made a (one) sample of product for the testing back then. It also was not the product they make today (underwent 10+ changes that would have impacted the certification)."

ECF No. 141 at 4 (quoting ECF No. 142-1 at 6). Defendants represent that Campos responded the same day, telling Lohmann:

> I know you can submit a compliant [sic] to their product review committee and give them data showing that the product that was tested is not the same as the product being produced. This may cost you in that you may have to test the product independently to show that they failed the PS 106 requirements. If they do accept your compliant [sic], then IAPMO will require this company to retest and the inspector will take a sample of [sic] the manufacturing line and not let the company make a special one for testing.

*Id.* at 5 (quoting ECF No. 142-1 at 5). Defendants likewise argue that this email exchange proves wedi was aware that that ICC-ES testing could not be done on "prototypes" prior to April 13, 2021. *Id.* at 8–9.

---

[6] wedi states that Campos was "a former IAPMO director" but does not allege that she was a IAPMO director at the time this email exchange occurred. ECF No. 146 at 4. In fact, on her 2017 email signature it states "Director of Standards, ICC-ES PMG" and includes an ICC-ES watermark. ECF No. 142-1 at 4–5.

Defendants also point to August 20, 2018 request for admissions (RFA) responses by one of the defendants in the '671 case:

> RFA No. 87: Admit that the date of first manufacture for all Hydroblok Products is March 2015, as stated in your Supplemental Responses to wedi's First Set of Interrogatories, No. 1, dated December 4, 2015.
>
> RESPONSE: Admitted.
>
> RFA No. 88: Admit that the current IAPMO Certificate of Listing for Hydroblok Products is based on the testing of **product samples** that were made before March 2014.
>
> RESPONSE: Admitted.
>
> RFA No. 89: Admit that every IAPMO Certificate of Listing for Hydroblok Products prior to the current one was based on the testing of product samples that were made before March 2014.
>
> RESPONSE: Admitted.

*Id.* at 5–6 (quoting HydroBlok Int'l Ltd.'s resp. to wedi's first set of requests for admission (RFAs), ECF No. 142-2 at 3–4) (emphasis added). Defendants also point to February 6 and 7, 2019 deposition answers in which wedi's counsel elicited the following response from Hydroblok International Ltd.'s president Kenny Koch:

> [wedi's counsel Daniel J. Becka]: The finished products that you referred to being completed in mid of 2014, would you consider those products to be **prototypes**?
>
> Koch: I'm not sure what you mean by that exactly, like prototypes?
>
> Becka: A prototype of a product that you're trying to ultimately develop for sale to the public.
>
> Koch: I would think – I would say yes, yeah.

*Id.* at 6–7 (quoting Koch dep., individually and 30(b)(6), ECF No. 142-3 at 4) (emphasis added).

**D.  wedi's reply brief (ECF No. 146)**

Following defendants' response, wedi sought leave of the court to file a reply brief. ECF No. 143. I granted wedi the opportunity to submit its additional briefing and permitted defendants to submit a surreply. Order, ECF No. 145.

In its reply, wedi points to multiple instances after 2017 where defendants represented that the ICC-ES certification was not based on the testing of prototypes. ECF No. 146 at 2.[7] Specifically, in defendants' reply brief earlier in this litigation regarding their Federal Rule of Civil Procedure 11 motion for sanctions (ECF No. 27), defendants included a section entitled "'The Hydro-Blok Products Tested by IAPMO Were Not 'Prototypes'" (ECF No. 34 at 6). In more than two pages of argument, defendants assert that wedi's allegation that the IAPMO tested products were prototypes was a "fundamental misrepresentation" to the court and point to the following excerpt in Koch's deposition:

> Becka: Was IAPMO ever advised by you that the samples they tested did not actually come from Hydroblok's initial product run, initial production run?
>
> . . .
>
> Koch: Yeah – . . . no, that – they were original production items that we sent to them for testing.
>
> Becka: The production run of Hydroblok products happened in early 2015, right?
>
> Koch: No, the production run started in late – early – well, late – early, I would say, 2014, yeah, late – or mid, mid 2014, I guess, is when we were in a position where we were making *production items*.
>
> Becka: Well, what is the difference between the production items that you made in mid 2014 and the production items that you made in early 2015 that we've been discussing?
>
> Koch: They are the same.
>
> Becka: And "mid 2014," you mean summer of 2014?

---

[7] Although wedi requests oral argument in its reply (ECF No. 146), I find that, as to the issue of "knew or should have known," no oral argument is necessary to resolve the question at hand.

> Koch: No, just a little bit prior to that, before we sent the samples to IAPMO for testing.
>
> . . .
>
> Becka: Have you or anybody to your knowledge ever told IAPMO that the products that were tested were *prototypes*?
>
> Koch: I don't recall.

ECF No. 34 at 7–8 (quoting Koch dep., individually and 30(b)(6), ECF No. 34-2 at 13–15 (emphasis in defendants' reply brief)). Defendants, in their Rule 11 reply brief, explained:

> From the foregoing exchange, several things are apparent: (1) wedi misrepresented the fact that Hydroblok sent "prototypes" to IAPMO for testing, (2) the ICC-ES certifications were not based on testing prototype products, and (3) Mr. Becka has been exploring at great length whether IAPMO tested prototype Hydro-Blok products since at least as early as February 6, 2019 (far earlier than after the October 2021 "appeal brief surprise" that wedi misrepresented in its Opposition).
>
> wedi's entire case is a house of cards, the foundation of which is **wedi's indefensible, incontrovertibly false allegation that the original IAPMO testing upon which the ICC-ES certifications are based—was done on prototype products.** Bluntly, wedi completely fabricated that argument, including the novelty of it, and wedi has come forward with no evidence that any non-production Hydro-Block products were ever tested by IAPMO.

*Id.* at 8 (emphasis added). wedi notes that the segment of Koch's deposition defendants now quote to support their contention that wedi was aware that Hydroblok used a prototype occurred on page 97 of deposition and the above exchange defendants previously used to argue the reverse occurred afterward, on pages 308–10. ECF No. 146 at 4. It also refutes the emails between Lohmann and Campos by explaining that the ICC-ES certification in question was issued in 2018, well after the email exchange occurred, and did not discuss prototypes. *Id.* It likewise refutes the citation to the requests for admissions by pointing to Hydroblok's "General Objection No. 10" in its admissions, which explains that "In these responses 'Hydroblok Product(s)' means the products sold or offered for sale by Defendant Hydroblok International, Ltd. or Defendant/Counterclaimant Hydro-Block USA." *Id.* (quoting HydroBlok Int'l Ltd.'s resp.

1  to wedi's first set of RFAs, ECF No. 146 at 12). wedi states that "[t]he fact that Hydroblok may

2  not have manufactured the specific products it *offered for sale* until March 2015 obviously does

3  not mean that every product made before then was a prototype as Defendants claim." *Id.*

4  (emphasis in original).

5      wedi asks that "sanctions [be] considered against Defendants for their own numerous

6  misrepresentations." *Id.* at 6.

7      **E.  Defendants' sur-reply brief (ECF No. 147)**

8      In their sur-reply, defendants state that the confusion arises out of what they claim is

9  wedi's ever-shifting definition of "prototype." ECF No. 147 at 2–3.[8] wedi, according to

10  defendants, has represented prototype to mean both "(1) any pre-commercialized product, [and]

11  (2) a product undergoing material changes that would require new testing." *Id.* at 2. They allege

12  that in their Rule 11 reply brief, for example, defendants explained "that the products tested in

13  2014 were not 'prototypes' because there were no differences between the tested products and

14  the commercial products sold in 2015." *Id.* at 3 (citing ECF No. 34).

15      Defendants thus maintain that they have consistently stated that (1) IAPMO approved

16  prototypes of their products to the extent that "prototype" means a pre-commercialized product

17  and (2) the relevant products that have been approved were *not* "prototypes" in the sense that

18  they were somehow materially changed before being made commercially available. *Id.* at 4. They

19  also assert that "wedi conducted extensive discovery on this exact issue in the '671 Case." *Id.*

20  Specifically, they point to the two-day deposition of Koch in which wedi's counsel asked "seven

21  questions on any changes in the mesh," "seven questions on any changes in the foam

22  composition," "thirteen questions on any changes in the cement composition," "eight questions

23  on any changes in the wallboard," and "nine questions on any changes in staff and the

24

25

26  [8] As discussed in the prior footnote, although defendants request oral argument in their sur-reply (ECF No. 147), I find that, as to the issue of "knew or should have known," no oral argument is necessary to resolve the question at hand.

manufacturing process." *Id.* at 4–5 (citing Koch dep., individually and 30(b)(6), ECF No. 148-1 at 4–17).

Defendants also point to a question raised by Becka during the Koch deposition in which Becka asked "[Do] you understand that every time Hydroblok renewed its certificate of listing, it was representing to IAPMO that there were no changes to the manufacturing process?" *Id.* at 5 (quoting Koch dep., individually and 30(b)(6), ECF No. 148-1 at 18). Defendants state that this demonstrates clearly that wedi knew IAPMO required new testing with each material change and for wedi to argue that it "was somehow surprised to learn that ICC-ES has the same requirement is at best disingenuous" because wedi "itself secured ICC-ES certification for at least one of its own products as early as May of 2018." *Id.* (citing wedi Fundo shower system ICC-ES report, ECF No. 148-2).

Defendants seek summary judgment as to wedi's claims as well as "sanctions against wedi for its continued misrepresentations to this Court." *Id.* at 6.

## II.    Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

1  (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must

2  produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."

3  *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

4        In the order to show cause, I explained that under Rule 56, the court is also empowered

5  to "consider summary judgment on its own after identifying for the parties material facts that

6  may not genuinely be in dispute." Fed. R. Civ. P. 56(f)(3); *see Hybrid Int'l, LLC v. Scotia Int'l of*

7  *Nevada, Inc.*, 2022 U.S. Dist. LEXIS 210406, at *5–6 (D. Nev. Nov. 21, 2022).

8  **III.    Discussion**

9        I find that, in light of the '671 action settlement agreement, wedi knew, or should have

10  known, of a potential claim regarding the "ICC-ES certified" question by the time the agreement

11  was signed in December 2019. However, because the parties to the '671 action settlement

12  agreement are not identical to the parties in this case, I order the parties to submit briefing on

13  this limited issue as directed below.

14        **A.  The Settlement Agreement**

15        On December 5, 2019, in the '671 litigation, wedi; Brian Wright; Sound Product Sales,

16  LLC; Hydro-Blok USA LLC; Seattle Glass Block Window, Inc.; and Hydroblok International,

17  Ltd. agreed to the following language:

18            Except as expressly reserved below in paragraph D, each individual party
          bestows to all other parties a covenant not to sue/arbitrate (or otherwise

19            litigate or pursue) any claim/causes of action/appeals/possible appeals, that are
          known or should have been known, as of today's date, December 5th, 2019.

20

21  ECF No. 124-1 (sealed), Dec. 5, 2019 Hr'g tr. at 7–8. In paragraph D of the settlement agreement,

22  wedi preserved "its right to appeal the District Court's summary judgment rulings with respect

23  to its claims under the Washington Consumer Protection Act and the Lanham Act pertaining to

24  false advertising, and to pursue any subsequent litigation that may be permitted as a result of

25  that appeal[.]" ECF No. 124-1 (sealed), Dec. 5, 2019 Hr'g tr. at 9.

26

To properly address this agreement in the context of the present litigation, I must consider several questions: (1) Regarding paragraph D, was the issue of the literal falsity of the "ICC-ES certified" advertising claim raised prior to the agreement?; (2) if not, under paragraph D, does the present lawsuit amount to "subsequent litigation . . . permitted as a result of that appeal"?; (3) if not, then did wedi know, or should have known, that it could raise the issue of the literal falsity of the "ICC-ES certified" advertising claim on or prior to December 5, 2019?

As discussed below, I find that that the issue of literal falsity had not been raised at the time the agreement was signed; that this litigation does not constitute subsequent litigation permitted as a result of wedi's appeal; and that wedi knew, or at least should have known, that it could raise a false advertising claim as to the "ICC-ES certified" advertisement by the time this agreement was made.

1. *The alleged literal falsity of the "ICC-ES certified" advertisement had not been raised by December 2019.*

When this agreement was made, summary judgment had already been granted by the '671 district court in favor of the '671 defendants, including on wedi's claim that the "ICC-ES tested" advertisement was literally false. wedi appealed, as it was permitted to do under paragraph D of the agreement, and the "ICC-ES tested" claim was ultimately returned to the district court for decision. wedi adamantly asserts that, at the time of the agreement, it was not even aware of the apparent literal falsity of the "ICC-ES certified" claim and first learned about it in 2021. *See* ECF No. 146 at 2. Based on this contention, as well as a thorough review of the record, I find there to be no dispute that the "ICC-ES certified" question had not been raised by December 5, 2019. The only question, at that point, that wedi had raised as to the "ICC-ES tested and certified" advertisement had to do with the "ICC-ES tested" claim, as was made clear in the Ninth Circuit's decision: "A material question of fact exists as to whether Hydro-Blok's products were tested by ICC-ES." Mar. 3, 2021 Ninth Cir. mem. on '671 case, ECF No. 134-1 at 176–77.

### 2. *This lawsuit does not fall under "subsequent litigation . . . permitted as a result of that appeal."*

A settlement agreement is treated as any other contract for purposes of interpretation. *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989). At summary judgment, a court may interpret a contract as a matter of law if the meaning of the contract is unambiguous. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006) (citation omitted). The language at issue here is the settlement agreement's paragraph D provision that wedi be able "to pursue any subsequent litigation that may be permitted as a result of that appeal[.]" ECF No. 124-1 (sealed), Dec. 5, 2019 Hr'g tr. at 9. This language immediately follows the acknowledgment that wedi was preserving "its right to appeal the District Court's summary judgment rulings . . . pertaining to false advertising[.]" *Id.* I find that the provision in question is unambiguous. The only possible interpretation of the contract is that wedi was preserving for itself its ability to appeal, as well as the natural course of litigation that might follow appeal: if affirmed, then petition for en banc review; if reversed, then pursuit of its claims—as set forth in the decision on reversal—in the district court of origin and beyond. When the Ninth Circuit reversed the '671 district court's decision, "subsequent litigation . . . permitted as a result of the appeal" included pursuing to trial in the district court the issue certified by the Ninth Circuit. It also included moving to re-open discovery on questions related to false advertising, up to and including the "ICC-ES certified" question. wedi did so. That its request was denied did not stop wedi's recourse. It could have pursued the "ICC-ES tested" question to trial and then challenged the district court's denial of the "ICC-ES certified" question in a motion for a new trial and/or on appeal. *Cf. Kassab v. Skinner*, 733 F. App'x 877, 880 (9th Cir. 2018) (holding that the district court did not abuse its discretion when it denied the defendant's motion for a new trial based on denial of the defendant's request to re-open discovery and explaining that the standard of review is "actual and substantial prejudice"). It could also have filed a motion for reconsideration of the district court's order.[9]

---

[9] I note that although the district court referred to wedi's motion to modify scheduling order and to reopen discovery as a "motion . . . for reconsideration" (Order, ECF No. 345 at 1), wedi clearly stated that

wedi did not pursue any of these options, deciding instead to dismiss its own claim with prejudice and then seemingly forum shop its way to the District of Nevada, a court with a tenuous—at best—connection to the events and parties in this case. By wedi's own admission, it chose dismissal with prejudice on its '671 claim in the Washington district court because "unfortunately for wedi, the Court has issued certain orders adverse to wedi that have caused wedi to ultimately decide to request voluntary dismissal[.]" ECF No. 360 in '671 action at 3.

Under the unambiguous reading of the '671 action settlement agreement, the current litigation is entirely new and wedi's "ICC-ES certified" question, raised in this court, is not part of what was contemplated under "subsequent litigation . . . permitted as a result of that appeal." Thus, this lawsuit does not fall under Paragraph D of the settlement agreement, and wedi could only bring these claims if it did not know, nor should it have known, that it could raise a false advertising claim about Hydroblok's "ICC-ES certified" advertisement when the settlement agreement was signed.

### 3. *wedi knew, or should have known, that it could raise the "ICC-ES certified" false advertising claim at the time it signed the settlement agreement.*

Based on the extensive briefing the parties have now provided on this issue (*see* ECF Nos. 139, 141, 146, and 147), even in the light most favorable to wedi, I find that the undisputed facts demonstrate that wedi knew or should have known that it could raise the "ICC-ES certified" false advertising claim on or before December 5, 2019. The issue that underlies wedi's "ICC-ES certified" literal falsity claim is that ICC-ES relied on IAPMO's certification of Hydroblok's products. Compl., ECF No. 1 at 9. wedi claims that, in the IAPMO certification process, the products tested were prototypes, different from the final products produced and sold on the market. *Id.* ICC-ES, in order to certify a product, requires that the product tested be the finalized production samples that will be available to the general public. *Id.* at 8. Thus, that ICC-ES certified the product in the first place, wedi argues, is literally false, because "Hydro-Blok

---

it "is not a motion for reconsideration because the Court never considered and denied a motion to reopen discovery in the first instance . . ." (Mot., ECF No. 341 at 4 n.1).

Products have never been legitimately certified by the ICC-ES based on the testing of actual finished products in accordance with ICC-ES standards and practices." *Id.* at 10.

To evaluate whether wedi knew or should have known of this potential claim, there are three distinct pieces of information I must consider: (1) when wedi knew or should have known that Hydroblok's product submissions to IAPMO were allegedly prototypes and not finalized production samples; (2) when wedi knew or should have known that the ICC-ES certification process was based on the same test reports as the IAPMO certification; and (3) when wedi knew or should have known that ICC-ES does not accept the testing of prototype samples for final product certification purposes. To assist in the answering of this question, I have created a chronological chart of the events, presented in the light most favorable to wedi, relevant to the question:

| Feb. – June 2014 | Hydro-Blok's alleged "prototype" product samples (including foam core, cement, and mesh) are first tested by IAPMO. Compl., ECF No. 1 at 9; Order in '671 action, ECF No. 134-1 at 164. |
| --- | --- |
| Mar. 2015 | The first Hydro-Blok products are certified by IAPMO. Am. compl. in '671 action, ECF No. 134-1 at 71. |
| Apr. 29, 2015 | wedi files suit in the Western District of Washington against Hydro-Blok USA, Brian Wright, and Sound Product Sales, LLC, alleging, in part, that the statement that Hydroblok products were IAPMO tested and certified was literally false. '671 action docket, ECF No. 134-1 at 22. |
| June 15, 2015 | wedi files an amended complaint in the '671 action, re-asserting that the claim that Hydroblok products were IAPMO tested and certified was literally false. '671 action Am. compl., ECF No. 134-1 at 72. |
| Aug. 3, 2016 | wedi files amended counterclaims related to the '615 action (now consolidated with the '671 action), raising, among others, claims under the Lanham Act and Washington's Consumer Protection Act (RCW 19.86.20) based on the advertising statement that "All Hydro-Blok products are IAPMO tested and certified." wedi's am. counterclaims in '671 action, ECF No. 134-1 at 91–95. |
| Feb. 8, 2017 | Bastian Lohmann, wedi's Director/VP of Marketing and Technical Services emails Maribel Campos, the Director of Standards at ICC-ES, stating:

Now we have obtained a copy of the full IAPMO report made for this Chinse [sic] product and if I read this report correctly, it seems to me that, when they tested in their Chinese lab, they indeed made use of this loophole in PS106 and did some of the tests by only testing the coating or tile |

foam, as if both items would be sold separately and applied on the jobsite (possibly under PS106 but not realistic, nor applicable here)

. . .

[P]lease rest assured I won't get you involved in this litigation here, I just value your input because something about this companies' IAPMO/ UPC approval is not right. And we already know [Hydroblok] hand-made a (one) sample of product for the testing back then. It also was not the product they make today (underwent 10+ changes that would have impacted the certification)."

ECF No. 142-1 at 6. In response, Campos stated:

I know you can submit a compliant [sic] to their product review committee and give them data showing that the product that was tested is not the same as the product being produced. This may cost you in that you may have to test the product independently to show that they failed the PS 106 requirements. If they do accept your compliant [sic], then IAPMO will require this company to retest and the inspector will take a sample of [sic] the manufacturing line and not let the company make a special one for testing.

ECF No. 142-1 at 5.

| | |
|---|---|
| May 2018 | wedi gets ICC-ES certification on its Fundo Shower System and Tile Backer Board Underlayments. ECF No. 148-2 at 2. |
| Aug. 20, 2018 | HydroBlok International Ltd. responds to wedi's first set of RFAs by admitting that "the date of first manufacture for all Hydroblok Products is March 2015," "the current IAPMO Certificate of Listing for Hydroblok Products is based on the testing of product samples that were made before March 2014," and "every IAPMO Certificate of Listing for Hydroblok Products prior to the current one was based on the testing of product samples that were made before March 2014." HydroBlok Int'l Ltd.'s resp. to wedi's first set of RFAs, ECF No. 142-2 at 3–4. |
| Oct. 11, 2018 | Parties in '671 action file cross-motions for summary judgment, with the defendants in the '671 action seeking summary judgment on, among other things, wedi's false advertising claim based on the IAPMO advertisement. '671 defendants' mot. for summ. j., ECF No. 134-1 at 111–14. |
| Nov. 5, 2018 | In its opposition to '671 defendants' motion for summary judgment, wedi states:<br>Since at least December 2014 and continuing today, Defendants began claiming that: "All HYDRO-BLOK products are tested and certified by IAPMO." This |

statement . . . is literally false because Hydroblok's products were never tested and certified by IAPMO. In fact (as Defendants have admitted in discovery), Hydroblok's first IAPMO Certificate of Listing issued in March 2015 and all subsequent Certificates to date are based on an IAPMO test report, dated March 28th, 2014, and that test report was based on tests done on samples of something provided to IAPMO which was made before March 2014. Hydroblok's products, however, were not manufactured until March 2015, and Hydroblok never submitted any samples of its own products for testing to IAPMO either in 2015 or at any time thereafter.

In addition, even if Hydroblok did submit samples of its own manufactured products to IAPMO for testing and certification (which it admittedly did not), as shown on the bottom of every one of Hydroblok's IAPMO Certificates as well in Hydroblok's Listing Agreement with IAPMO, Hydroblok was prohibited from making any substantial changes in materials or manufacturing process without first obtaining IAPMO's approval, and Hydroblok agreed that "any substantial change in the original product after acceptance and listing by IAPMO R&T which is not authorized by IAPMO R&T will automatically result in delisting of the product until such written approval is received[.]" Hydroblok, however, admittedly never notified IAPMO of any changes to its material or manufacturing process at any time.

wedi's '671 action opp. to mot. for summ. j., ECF 134-1 at 126 (citations removed).

| Feb. 5 to 8, 2019 | wedi conducts depositions of Wright and Koch, learning that the '671 defendants had, at some point during 2018, changed their advertising claim from "All HYDRO-BLOK products are IAPMO tested and certified" to "HYDRO-BLOK products are ICC-ES tested and certified." ECF No. 134-1 at 140–41. During Koch's deposition, wedi also allegedly learns that the products were not tested by ICC-ES; ICC-ES certified the products in 2018 based on testing done by IAPMO when IAPMO certified the products in 2015. *Id.*<br><br>In this same deposition, he tells wedi's counsel that he "would say yes" to the proposition that mid-2014 Hydroblok finished products were "prototypes." ECF No. 141 at 5–6. He also later states that the samples sent to IAPMO for testing "were original production items" and that he did not recall whether he or anyone else told IAPMO the tested products were prototypes. ECF No. 34-2 at 14–15. |

| | |
|---|---|
| | Koch is also asked extensively about material changes made to mesh, foam composition, cement composition, and wallboard, as well as the manufacturing process and staff between the pre-commercial and commercial products. ECF No. 148-1 at 4–5, 9–17. |
| Mar. 22, 2019 | wedi files a supplemental brief in support of its opposition to summary judgment in the '671 action arguing that the new "ICC-ES tested and certified" advertisement was literally false because the ICC-ES had not tested the Hydroblok products but instead relied "on the same test reports as were Hydroblok's IAPMO Certifications[.]" wedi's '671 action suppl. opp. to mot. for summ. j., ECF No. 134-1 at 140–41. |
| June 18, 2019 | The '671 district court grants summary judgment for defendants on the IAPMO false advertising claim, adds the "ICC-ES tested and certified" false advertising claim to the case, and grants summary judgment for defendants on that claim as well. ECF No. 134-1 at 161–66. |
| Dec. 5, 2019 | Parties reach their settlement agreement in the '671 action. ECF No. 124-1 (sealed), Dec. 5, 2019 Hr'g tr. at 7–8. |
| Mar. 13, 2020 | wedi files a notice of appeal to the Ninth Circuit, seeking review of the '671 trial court's decision on the granting of summary judgment as to the IAPMO and ICC-ES claims. '671 action docket, ECF No. 134-1 at 54. This was followed by an amended notice of appeal, filed on May 5, 2020. *Id.* |
| Oct. 19, 2020 | wedi claims that an "answering brief" filed by the '671 defendants on this date represents the first time that wedi learns that the "Hydro-Blok products tested on which the ICC-ES certification was issued in 2018 were only prototypes." ECF No. 139 at 6 (citing to ECF No. 341 in '671 action at 9–10). |
| Mar. 19, 2021 | The Ninth Circuit affirms the grant of summary judgment on all claims except the ICC-ES advertising claim, sending it back down to the Western District of Washington to determine whether "whether Hydro-Blok's products were tested by ICC-ES because Plaintiff presented evidence that ICC-ES did not request product samples from Hydro-Blok to test, but rather relied upon IAPMO's tests." Ninth Cir. memo., ECF No. 134-1 at 176. |
| Apr. 13, 2021 | wedi claims that this is the date that it first receives information that ICC-ES certification prohibits a tested product from being a prototype from an email exchange with Maribel Campos, the ICC-ES Director of Standards. wedi's '671 action req. to modify sched. order, ECF No. 134-1 at 192. |

       a. *wedi knew that it had a potential claim that Hydroblok's submissions to IAPMO were not finalized samples prior to the '671 action settlement.*

There is ample evidence that by the time the settlement agreement was reached, wedi knew the information necessary to raise the argument that IAPMO was not presented with—and ultimately did not consider—final samples of Hydroblok products. In Lohmann's February 2017 email he states that "we already know [Hydroblok] hand-made a (one) sample of product for the testing back then" when referring to the IAPMO testing. ECF No. 142-1 at 6. Additionally, in its August 2018 response to its RFAs, HydroBlok International Ltd. admitted that "the current IAPMO Certificate of Listing for Hydroblok Products is based on the testing of product samples that were made before March 2014," and "every IAPMO Certificate of Listing for Hydroblok Products prior to the current one was based on the testing of product samples that were made before March 2014." ECF No. 142-2 at 3–4. In November 2018, wedi itself argued that the IAPMO testing report "was based on tests done on samples of something provided to IAPMO which was made before March 2014. Hydroblok's products, however, were not manufactured until March 2015, and Hydroblok never submitted any samples of its own products for testing to IAPMO either in 2015 or at any time thereafter." ECF 134-1 at 126 (citations removed).

wedi asserts that it did not know that defendants were advertising that the Hydroblok products were "ICC-ES tested and certified" until Koch's February 2019 deposition. ECF No. 139 at 2. Assuming this is true, I still find that wedi was evidently aware by December 2019 that the claim that "Hydroblok's submissions to IAPMO were not finalized samples" could be raised. wedi argues in its supplemental briefing that defendants "are trying to deceive the court" because, at times, defendants have argued that the products tested were finalized samples, not prototypes. ECF No. 146 at 2–4. It points to a July 2022 filing in *this case* in which defendants labelled a section of their brief "The Hydro-Blok Products Tested by IAPMO Were Not 'Prototypes'." *Id.* at 3 (citing ECF No. 34 at 7–8). wedi points to several other statements from

defendants that seem to confuse whether the products tested by IAPMO were prototypes or finalized samples. *See id.* at 4–6. Although I do not take lightly that defendants have taken some seemingly contradictory positions, or perhaps made misleading use of certain words to explain their position, this is wholly irrelevant to whether wedi knew or should have known this was, at the very least, a potential issue in December 2019. That wedi argued this very point in one of its briefs is evidence enough to reach this conclusion.

        **b.**   **wedi knew that the ICC-ES certification of Hydroblok's products was based on the testing from the IAPMO certification prior to the '671 action settlement.**

      The answer to this question is clearly reflected in the record. On March 22, 2019, wedi filed a supplemental brief in support of its opposition to summary judgment in the '671 action arguing that the new "ICC-ES tested and certified" claim was literally false because the ICC-ES had not tested the Hydroblok products but instead relied "on the same test reports as were Hydroblok's IAPMO Certifications[.]" wedi's '671 action suppl. opp. to mot. for summ. j., ECF No. 134-1 at 140–41.[10] Therefore, I find that by December 2019, wedi knew the information necessary to raise the argument that the ICC-ES certification process of Hydroblok's products was based on the testing from the prior IAPMO certification.

        **c.**   **wedi knew or should have known that ICC-ES does not accept the testing of prototype samples for final product certification purposes prior to the '671 action settlement.**

      wedi adamantly contends that it first learned that ICC-ES refuses to accept prototype samples for its certification of final products on April 13, 2021. wedi's '671 action req. to modify sched. order, ECF No. 134-1 at 192. Accepting this as true for purposes of summary judgment, I find that wedi nonetheless ***should have known*** this fact prior to the December 5, 2019 settlement agreement.

---

[10] I find disingenuous wedi's assertion that it did not learn "that the Hydro-Blok products tested on which the ICC-ES certification was issued in 2018 were only prototypes" until October 19, 2020. *See* ECF No. 139 at 3. As stated above, it argued both that the IAPMO testing was based on prototypes *and* that the ICC-ES evaluation was based on the same test reports as the IAPMO evaluation prior to December 2019. It is hard to believe that wedi and its attorneys could not synthesize this information to its obvious conclusion, but instead needed it spelled out explicitly in one of '671 defendants' briefs.

wedi "manufactures and distributes building materials and sealants used in the construction of waterproof shower systems and other tiled wet rooms throughout the United States and elsewhere." ECF No. 1 at 2. It states that although its parent company is in Germany, it has been "selling its products in the United States since 2004." *Id.* Thus, wedi is not new to the United States shower systems business and was not new to it when the original lawsuit began in 2015. When it signed the December 2019 settlement agreement, wedi was also not new to ICC-ES certification, having had at least one of its own products certified in 2018. Fundo shower sys. & tile backer bd. underlayments ICC-ES certification, ECF No. 148-2 at 2. There is also ample evidence that, by December 2019, wedi was aware that IAPMO did not permit the testing of product prototypes. More than a year before the settlement, wedi argued that "Hydroblok was prohibited from making any substantial changes in materials or manufacturing process without first obtaining IAPMO's approval . . . ." wedi's '671 action opp. to mot. for summ. j., ECF 134-1 at 126.

Taking these facts together, by 2019 wedi was a sophisticated business with a long history in the industry, was familiar with the ICC-ES certification process, and knew that at least one other industry product certifier barred the testing of prototypes. wedi was also actively arguing about this very issue in the context of IAPMO certification shortly before it first learned that Hydroblok had begun advertising the ICC-ES certification. *Compare* wedi's '671 action opp. to mot. for summ. j., ECF 134-1 at 126 (filed Nov. 5, 2018, arguing '671 action defendants changed the products submitted for IAPMO certification before selling them to the public), *with* Koch dep., ECF No. 134-1 at 140–41 (taken Feb. 5 and 6, 2019, informing wedi about the "ICC-ES certified" advertisement). Even if wedi did not get explicit written confirmation that ICC-ES had a similar requirement to IAPMO, wedi should have been aware that ICC-ES had the same requirement.

wedi cannot argue it did not have the opportunity to further investigate to confirm the ICC-ES rules, either. Although it claims it only learned about Hydroblok's ICC-ES certified

advertisement during Koch's February 2019 deposition, wedi did not need any additional depositions or other discovery to get this information because it already had access to all of the tools it needed. wedi was familiar with Maribel Campos at least as far back as 2016. Emails between Lohmann and Campos, ECF No. 142-1 at 9. Although Campos did not discuss ICC-ES standards in the 2016 and 2017 emails with Lohmann, she did include an ICC-ES watermark in her emails, and signed off as "Director of Standards, ICC-ES PMG." *Id.* at 2–3, 4, 5, 7, 8–9. The emails demonstrate an understanding of Campos's knowledge and skillset, and although she mostly answered questions about IAPMO (her former employer) she describes in one email "[t]he products that I have since while [sic] at IAPMO and here at ICC have never had the coating put on the styrene out of field." *Id.* at 8. The email exchange also included a comment about not getting Campos "involved in this lawsuit" suggesting that wedi knew it could turn to her to answer questions related to the ongoing action between wedi and the '671 action defendants. Thus, wedi had Campos's contact information; was aware of, and interested in, Campos's experience and understanding of the IAPMO standards; knew—or should have known—that she assumed a role requiring similar knowledge about the ICC-ES standards; and had a history of going to her to answer questions about these standards *in the very lawsuit* that precipitated the settlement agreement. Indeed, wedi demonstrated that it never lacked the opportunity to investigate because it claims it ultimately learned about ICC-ES barring consideration of prototypes from Campos's response to an emailed question Lohmann sent in 2021. ECF No. 134-1 at 192. As wedi stated in its motion to modify the scheduling order and reopen discovery in the '671 action:

> In her April 13, 2021, response to wedi's inquiry (Bastian Lohmann) as to whether prototype testing is acceptable for ICC-ES certification purposes (which was made after the Ninth Circuit reversed summary judgment regarding the ICC-ES Statement), Maribel Campos, Director of Standards, ICC-ES PMG, stated: "We do not accept testing from prototypes samples as product may change or have other variable in play once the main product is made."

*Id.* (quoting ECF No. 342 in '671 action at 9–10).

26

wedi had more than nine months between learning about the "ICC-ES certified" advertisement and signing the settlement agreement to investigate this claim. Not only should wedi have known that the ICC-ES did not permit the testing of prototypes, but it faced no barriers to confirming this information. wedi instead pursued other claims and only after losing on all but one of the issues it appealed to the Ninth Circuit did it decide to investigate and confirm this information. Because wedi failed to pursue a claim which it should have known about by December 2019, its current lawsuit threatens to violate the settlement agreement.

### B. Parties to the settlement agreement

I note here that if the '671 action settlement agreement were signed by the same parties as are currently involved in this case, my inquiry would be complete, and I would grant summary judgment to defendants on their counterclaims. I would also find that wedi's claims, regardless of the affirmative defenses raised by defendants in their counterclaim, are barred by the agreement. However, the parties are not identical. wedi remains the plaintiff and Hydro-Blok USA LLC remains a party, but the other parties to the settlement agreement were and Brian Wright, Sound Product Sales, LLC, Seattle Glass Block Window, Inc., and Hydroblok International, Ltd. ECF No. 124-1 at 7. The defendants in the present action, in addition to Hydro-Blok USA, are Hydroblok Grand International Inc. and Hydroblok Grand International Ltd., neither of which signed the '671 action settlement agreement.

In their counterclaim, defendants state "By virtue of its status as successor in interest to Hydroblok International Ltd., Defendant/Counterclaimant Hydroblok Grand International Ltd. has inured the benefits and detriments of the Settlement Agreement as though it was an original party to the Settlement Agreement." Am. answer and countercl., ECF No. 125 at 59. In its answer to the amended counterclaim, wedi denies this assertion. ECF No. 140 at 15. No mention is made of Hydroblok Grand International Inc. Because this issue has not been briefed by either party, I cannot make a final determination as to summary judgment on any of the issues in this case or the pending motions. Therefore, I order the parties to submit briefs no longer than five pages by

March 27, 2025 for the limited purpose of determining whether Hydroblok Grand International Inc. and Hydroblok Grand International Ltd., despite not being parties to the settlement agreement, can enforce its terms. Additionally, at this time I do not find that sanctions are warranted against either party.

IV.     **Conclusion**

IT IS SO ORDERED that the parties are to submit briefs no longer than five pages by March 27, 2025, for the limited purpose of determining whether Hydroblok Grand International Inc. and Hydroblok Grand International Ltd., despite not being parties to the December 5, 2019 settlement agreement, can enforce its terms.

Dated: March 12, 2025

_____
Cristina D. Silva
United States District Judge